IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

SANITHA INGRAM,                )
                               )
        Plaintiff,             )
                               )
    v.                         )   CIVIL CASE NO. 1:19-cv-183-ECM
                               )              (WO)
HOBBY LOBBY STORES, INC.,      )
                               )
        Defendant.             )

**MEMORANDUM OPINION and ORDER**

Plaintiff Sanitha Ingram ("Ingram") initiated this suit on March 5, 2019, by filing a complaint in the Circuit Court of Houston County, Alabama against Defendant Hobby Lobby Stores, Inc. ("Hobby Lobby"). (Doc. 1-1). Ingram alleges that on or about July 5, 2017, she sustained severe injuries when she slipped and fell on glitter in a store owned and operated by Hobby Lobby in Dothan, Alabama. (*Id*. at ¶ ¶ 4-6). Ingram claims that her injuries are the result of Hobby Lobby's negligence and/or wantonness and she seeks compensatory and punitive damages. *Id.* at 3-4.

On March 13, 2019, Hobby Lobby removed the case to this Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332 and § 1441. Ingram is a citizen of the state of Alabama, and the notice of removal asserts that Hobby Lobby is a corporation organized under the laws of the state of Oklahoma with its principal place of business in Oklahoma. (Doc. 1 at 2). Although Ingram seeks compensatory and punitive damages, her complaint does not specify an amount of damages. In its notice of removal, Hobby Lobby alleges

that the Court has jurisdiction over this matter because the parties are citizens from different states and the amount in controversy exceeds $75,000, exclusive of interest and costs because Plaintiff's "[c]ounsel submitted a settlement demand . . . plac[ing] the settlement value of her lawsuit against Hobby Lobby at $185,000 in total and offered an abundance of specific information to support her claim for damages." (Doc. 1 at 4, ¶ 11).

On April 11, 2019, the Plaintiff filed a motion to remand (doc. 5) which is opposed by Hobby Lobby. (Doc. 10). The motion to remand is fully briefed, under submission, and ready for resolution without oral argument. Upon consideration of the motion, and for the reasons that follow, the Court concludes that the motion to remand is due to be DENIED.

## STANDARD OF REVIEW

In examining the issue of jurisdiction upon which the Defendant premises removal, the Court is mindful of the fact that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilley & Co.*, 778 F.3d 909, 911 (11th Cir. 2014). Congress has empowered the federal courts to hear cases removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

To establish diversity jurisdiction, the removing party must not only demonstrate that the parties are completely diverse, but, where the amount in controversy is not evident from the face of the complaint, that the amount in controversy exceeds the $75,000

2

jurisdictional minimum set by 28 U.S.C. § 1332. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010).

Removal statutes are to be strictly construed against removal. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108 (1941); *Burns*, 31 F.3d at 1095 ("[R]emoval statutes are construed narrowly; when the parties dispute jurisdiction, uncertainties are resolved in favor of remand."). When a case is removed to federal court, a removing defendant's burden to establish federal jurisdiction is "a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The removing party has the burden of proving that federal jurisdiction exists by a preponderance of the evidence, and the removing party must present facts establishing its right to remove. *Williams v. Best Buy Company, Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). Any questions or doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Burns*, 31 F.3d at 1095. When the defendant fails to meet its burden, the case must be remanded. *Williams,* 269 F.3d at 1321.

## DISCUSSION

The parties agree that there is complete diversity between them -- Ingram is a citizen of Alabama, and Hobby Lobby is considered a citizen of the state of Oklahoma. Relying on the Plaintiff's pre-suit demand letter dated December 6, 2018, Hobby Lobby argues that the demand letter is an "other paper" sufficient to establish that the amount in controversy exceeds $75,000. (Doc. 1 at 3).

On April 11, 2019, Ingram filed a motion to remand (doc. 5) arguing that Hobby Lobby has failed to "unambiguously establish that the amount in controversy exceeds

3

$75,000 . . ., and . . . remand is warranted." (*Id.* at 1). Thus, the issue before the Court is whether Hobby Lobby has met its burden of establishing that the amount in controversy exceeds $75,000.00.

The complaint does not state an amount of damages. Where the amount in controversy is not evident from the face of the complaint, the removing party must demonstrate by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional minimum set by 28 U.S.C. § 1332. *Pretka*, 608 F.3d at 752; *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir. 2007). The Plaintiff argues, however, that because the Defendant relies on the pre-suit demand letter as "other paper," it must "unambiguously establish" that the amount in controversy exceeds $75,000. (Doc. 5, ¶ 4; Doc. 6, p. 6).

Because the Plaintiff did not specify an amount of damages in her complaint, and because the Defendant removed this case within thirty (30) days of receipt of the complaint, the Court concludes that Hobby Lobby must establish by a preponderance of the evidence that the amount in controversy is met. Moreover, even under the heightened "unambiguously established" standard, the Court concludes that the Defendant has established that the amount in controversy is met [1]

---

[1] A defendant must "unambiguously establish" federal jurisdiction for a removal pursuant to § 1446(b)(3). *See Advantage Med. Elecs, LLC v. Mid-Continent Cas. Co.*, 2014 WL 1764483, at *5 (S.D. Ala. 2014) (The "*Lowery's* unambiguously establish burden replaces [the preponderance-of-the-evidence] burden when a plaintiff challenges the procedural propriety of a removal under [§ 1446(b)(3)] by . . . timely moving to remand under § 1447(c)" (citation and internal quotation marks omitted)).

4

In its notice of removal, Hobby Lobby attached a pre-suit demand letter from Ingram's counsel dated December 6, 2018, that offers to settle all her claims for $185,000. (Doc. 1-3 at 5). The letter describes in detail Ingram's injuries, her medical treatment and expenses, and "[t]he effects of this fall have caused Ingram chronic pain, depression, suffering and financial hardship." (*Id*. at 4). Counsel for Ingram informed Hobby Lobby that he intended to seek compensatory and punitive damages on behalf of his client. (*Id*. Ex. B at 1). He listed Ingram's medications and dosages as well as her diagnoses and treatments. (*Id*. at 2-4). He painstakingly describes her injuries and her prognoses.

> Additionally, Ingram had been on a leave of absence from AAA Cooper for a period of one year due to spinal surgery performed in 2016 by Dr. Jeremiah Maddox. She was scheduled to return to work when this fall occurred, but because of said fall, she was unable to do so.
>
> Ms. Ingram's fracture was **directly** related to the fall she incurred at Hobby Lobby on July 5, 2017 with hip pain exacerbated from this fall. The multiple radiological tests performed during this period indicated that the fracture was distinct and the hip pain was exacerbated by the fall. CAT revealed post-fusion injury to the back and erosion of the distal scaphoid. These declines are confirmed by radiology procedures throughout the treatment period. Ms. Ingram has suffered interference with ADL due to pain upon walking, lying and sitting. Ingram has explicitly followed doctors' orders without elimination of chronic pain doctor reports that radiological results reveal chronic conditions now exist. Arthritis was evidenced on the last radiological procedure that was absent on the initial procedure.

(*Id*. at 4) (emphasis in the original).

The demand letter enumerates Ingram's medical expenses as of the date of the letter as $37,223.82. (*Id*. at 4-5). It further states that Ingram is unable to return to work as a result of the fall, and she would continue to have medical expenses associated with her injuries. (*Id*. at 5). Finally, counsel notifies Hobby Lobby that Ingram will seek punitive

5

damages because "her massive amount of pain and affliction caused her severe distress and anguish." (*Id*).

There is little dispute that "[a] settlement offer can constitute an 'other paper' within the meaning of 28 U.S.C. § 1446(b)." *Lowery*, 483 F.3d at 1213 n.62. And "[w]hile [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns*, 31 F.3d at 1097. Ingram contends that her pre-suit demand letter was nothing "more than a starting point for negotiation." (Doc. 6 at 5). Relying on *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279 (S.D. Ala. 2009), Ingram labels her letter as "posturing and puffery" and "part of the negotiation process in almost all, if not all, civil cases." (*Id*. at 6).

When a settlement letter provides little in the way of support or analysis, courts have afforded such settlement offers little weight --writing them off as "puffing and posturing." *Wood v. ADT LLC*, 2016 U.S. Dist. LEXIS 187063, at *14–15 (M.D. Ala. 2016) (stating that a settlement offer carries "little weight," when there is an "absence of specific information on the basis of the demand."); *Jackson*, 651 F. Supp. 2d at 1281 (A settlement offer has "little weight" in the amount-in-controversy calculus when it merely "reflect[s] puffing and posturing"). However, in contrast to the cases cited above, the Plaintiff's demand letter set forth in detail her injuries, treatment, medications, medical procedures, medical expenses, and damages. It meticulously explains the nature of Ingram's injuries, her treatment, and how her injuries would support damages in the amount of $185,000. This is not a case where the Plaintiff made conclusory or boilerplate allegations. The comprehensive description of injuries, medical treatment and damages moves this case

6

from the realm of puffery and posturing into a concrete assessment of damages. Notably, nowhere in Plaintiff's Motion to Remand or supporting documents does she affirmatively represent to the Court that the amount in controversy does not exceed $75,000. Only after facing the possibility of having her case remain in federal court does the Plaintiff characterize her settlement demand as "puffing and posturing."

> So, plaintiff's claim, when it is specific and in a pleading signed by a lawyer, deserves deference and a presumption of truth. We will not assume – unless given reason to do so – that plaintiff's counsel has falsely represented, or simply does not appreciate, the value of his client's case. Instead, we will assume that plaintiff's counsel best knows the value of his client's case and that counsel is engaging in no deception. We will further presume that plaintiff's counsel understands that, because federal removal jurisdiction is in part determined by the amount of damages a plaintiff seeks, the counsel's choices and representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer.

*Burns*, 31 F.3d at 1095. The Court will take Plaintiff's counsel at his word and credit his assessment of his client's case as valued at $185,000, an amount of which more than exceeds the Court's jurisdictional requirement.

Furthermore, in *Roe v. Michelin N. Am., Inc.*, the Eleventh Circuit held that, when a case is removed on the basis of an initial complaint that does not plead a specific amount of damages, the removing defendant is required to show by a preponderance of the evidence that more likely than not the amount in controversy exceeds the jurisdictional minimum. 613 F.3d 1058, 1061 (11th Cir. 2010). Under *Roe*, this Court can apply "judicial experience and common sense" to the allegations of the complaint regarding Ingram's injuries and her inability to return to work, and determine that, more likely than not, when

7

coupled with her medical expenses of $37,223.82 by December 2018, Ingram's damages are sufficient to meet the jurisdictional minimum.

Finally, the Plaintiff argues that the Court should consider the Defendant's assessment of her case in determining the amount in controversy. According to Ingram, Hobby Lobby valued the case at $6000 which qualifies for small claims court in Alabama, and thus, should not have been removed to this Court. *See* Doc. 6 at 7, Doc. 12 at 2. The Defendant's evaluation of the case is immaterial. While the Plaintiff is the master of her complaint, *see Caterpillar*, 482 U.S. at 391 & n. 7, "the removal statute grants the defendant[] a right to a federal forum." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137 (2005). The fact the Defendant valued the case significantly lower than the Plaintiff has no bearing on whether the amount of controversy has been established by a preponderance of the evidence.

## CONCLUSION

Accordingly, for the reasons as stated, and for good cause, it is

ORDERED that the Plaintiff's motion to remand (doc. 5) is DENIED.

Done this 25th day of July, 2019.

                                      /s/Emily C. Marks
                                EMILY C. MARKS
                                CHIEF UNITED STATES DISTRICT JUDGE